IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–03685–KMT

DAVID WAYNE HOSKINS,

    Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

Plaintiff David Wayne Hoskins ["Hoskins"] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Andrew M. Saul, Commissioner of the Social Security Administration ["Commissioner"], denying his applications for disability insurance benefits and supplemental security income.  (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 13; ["Response"], Doc. No. 18; ["Reply"], Doc. No. 20.)  The Commissioner has also filed the Administrative Record.  (Social Security Administrative Record ["AR"], Doc. No. 11.)  After carefully analyzing the briefs and the administrative record, the court REVERSES the Commissioner's final decision, and REMANDS for further proceedings consistent with this Order.

## BACKGROUND[1]

Hoskins was born on July 30, 1974; he was forty-two years old on the alleged disability onset date. (AR 24 ¶ 7, 61, 163.) He has a high school education. (AR 24 ¶ 8, 190.) His employment history includes positions as a flagger and a heavy truck driver. (AR 24, 190.)

On March 2, 2017, Hoskins applied for disability insurance benefits, pursuant to Title II of the Social Security Act ["the SSA"], and for supplemental security income, pursuant to Title XVI of the SSA. (AR 15, 163-74.) In both applications, Plaintiff claimed that he had been unable to work since August 26, 2016, due to "spinal stenosis," a "bulging and torn disc in back," and a "herniated disc in neck pushing on spinal cord." (AR 189, 195.) The Commissioner denied Plaintiff's applications on August 2, 2017. (AR 67-98.) Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"]. (AR 126-62.) That hearing took place on February 5, 2019, before ALJ William Mussenan. (AR 32-55.) Plaintiff appeared and testified at the hearing, accompanied by his attorney. (*Id.*) The ALJ also heard testimony from a vocational expert. (*Id.*) Medical evidence and opinions were provided by a non-examining state agency physician, Robert Bernardez-Fu, M.D.; a treating nurse, Nicole Betts, N.P.C.; and an examining physician, Michael Dewey, D.O. (AR 78-80, 456-64, 475.)

At the hearing, the ALJ heard testimony from Plaintiff regarding his impairments. Hoskins testified that he suffers from a neck impairment, for which he underwent surgery in 2017. (AR 37.) Plaintiff told the ALJ that, despite the surgery, he still experienced various "issues," including a shooting pain in the "left side of [his] spinal cord though [his] spine,"

---

[1] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

whenever he turned his head "in any direction." (AR 37-38.) Hoskins testified that, due to the pain in his neck, he must "lay down" periodically throughout the day, "usually in the mornings," as well as a "couple [of] times in the afternoons." (AR 38, 48-49.) Plaintiff told the ALJ that he also suffers from lower back pain, for which he had recently started receiving monthly injections from a pain specialist. (AR 38-39, 42.) However, he denied any noticeable improvement from that treatment. (AR 38-39.) Hoskins also reported bilateral sciatic nerve pain, predominately in his right leg, which was exacerbated by sitting, and at times, by walking. (AR 39-40.) Plaintiff testified that, due to the sciatic nerve pain, he can stand continuously for one hour, at most, before he must rest. (AR 40.) Hoskins also reported difficulty standing to urinate. (AR 49.) He further reported that, due to lower back pain, he is unable to sit for long periods of time. (*Id.*) Plaintiff likewise reported that he often must lay down "to get the pressure off." (AR 48.) Hoskins testified that he has difficulty lifting and carrying items weighing in excess of ten pounds, as it "makes the pain kind of explode." (AR 49-50.) In addition, Plaintiff reported a history of hernia surgery, as well as "possible" carpal tunnel syndrome in his left wrist, and "mild" carpal tunnel syndrome in his right wrist, though he denied any significant, ongoing pain from those conditions. (AR 41-42.)

  Hoskins told the ALJ that he currently lives with his wife and two children in a single-story house. (AR 46-47.) Plaintiff testified that, on a typical day, he first takes his prescribed pain medication, and then helps his eight-year-old son get ready for school. (AR 43, 46-47.) Hoskins reported that, in the mornings, he usually also takes another prescribed medication for his nerve pain, though he complained that it makes him feel "loopy" and "very sleepy," and that it adversely affects his focus and concentration. (AR 44-46.) Plaintiff testified that, after his son

leaves for school, he generally does not do "a whole lot" for the rest of the day, other than "hang around" the house, watch television, and "walk back and forth." (AR 47-48.) Hoskins reported that his wife, who does not work and also suffers from chronic health conditions, drives him around, and does the grocery shopping, as well as most of the cooking and cleaning. (AR 46-47.) However, Plaintiff testified that he does prepare simple meals and do light housework. (AR 47.)

On March 13, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process.[2] (AR 15-26.) The ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful activity since August 26, 2016, the alleged onset date. (AR 18 ¶ 2.) At step two of his analysis, the ALJ found that Hoskins suffered from the following severe impairments: "degenerative disc disease of the lumbar, thoracic, and cervical spine, with cervical radiculopathy affecting the shoulders; and medial

---

[2] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988); *see also McCrea v Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004) (observing that the same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Id.* at 751 & n.2. The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience. *Id.* A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

meniscus tear of the right knee, status post meniscectomy." (AR 18 ¶ 3.) The ALJ also found that Plaintiff suffered from several non-severe impairments, including "mild right carpal tunnel syndrome," "possible left carpal tunnel syndrome," "right inguinal hernia status post-surgical repair with mesh placement," and "a history of kidney stones." (*Id.*) None of Hoskins's impairments, alone or in combination, were found to be presumptively disabling at step three. (AR 18-19 ¶ 4.)

Prior to reaching step four, the ALJ assessed Plaintiff's residual functional capacity ["RFC"], and found him capable of sedentary work, subject to the following limitations:

> [T]he claimant can occasionally turn or flex his neck; can occasionally work overhead; can frequently handle and finger; can occasionally bend, squat, and kneel; can occasionally operate foot or leg controls; but he cannot climb ladders or scaffolds, and he cannot be exposed to hazardous work areas.

(AR 19 ¶ 5.) The ALJ further found that Hoskins can "lift, carry, push or pull no more than 10 pounds at a time;" that he can "occasionally lift, carry, push or pull smaller articles like docket files, ledgers, and small tools;" that he can stand and/or walk no more than two hours within an eight-hour workday; that he can sit no more than six hours within an eight-hour workday; that he "cannot perform significant stooping;" and that he "retains good use of the hands and fingers for repetitive hand-finger actions." (AR 19-20.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence. (AR 20-23.) The ALJ determined that, while Hoskins's impairments could reasonably be expected to cause some of the alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of his conditions was "not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) The ALJ likewise concluded that the objective medical evidence, though

5

supportive of some functional limitations, did not "support the existence of limitations greater than" those set forth in the RFC assessment. (AR 20-22.) In addition, the ALJ discussed the medical opinions, first giving "some weight" to the overall opinion from non-examining state agency physician, Robert Bernardez-Fu, M.D. (AR 22; *see* AR 78-80.) In doing so, the ALJ accorded "great weight" to the portion of Dr. Bernardez-Fu's opinion addressing "limitations on posturals, overheard reaching, and avoiding hazards," because those findings were "consistent with the medical evidence of record," and "reflect[ed] Dr. Bernardez-Fu's knowledge of the rules, regulations, and evidentiary requirements of the Social Security Administration's disability programs." (AR 22.) However, the ALJ assigned "little weight" to the remainder of Dr. Bernardez-Fu's opinion, for three reasons: (1) "evidence received at the hearing level support[ed] greater limitations;" (2) "State agency doctors do not examine claimants and therefore their opinions reflect a limited view of the claimant's functioning;" and (3) "the opinion [wa]s generally inconsistent with the objective medical record, which supports a sedentary exertional level." (*Id.*) The ALJ next assigned "no weight" to the opinion from Nicolle Betts, N.P.C., because the opinion exclusively addressed issues "reserved to the Commissioner," because it was "generally inconsistent with the objective medical record," and because Nurse Betts "did not provide any specific limitations," or "cite to any examinations or objective findings to support her conclusion." (AR 22-23; *see* AR 475.) Finally, the ALJ considered an opinion from a consulting physician, Michael Dewey, D.O., regarding his July 15, 2017 examination of Plaintiff. (AR 23; *see* AR 456-64.) The ALJ gave Dr. Dewey's opinion "little weight," as it was "not internally consistent" with Dr. Dewey's own examination findings, "generally inconsistent with the objective medical record," and because it appeared to be "based

in large part" on Plaintiff's subjective complaints.  (AR 23.)  At step four, the ALJ determined, based on the vocational expert's testimony, that Hoskins was unable to perform any past relevant work.  (AR 23 ¶ 6.)  However, at the final step of his analysis, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," based on his age, education, work experience, and residual functional capacity.  (AR 24-25 ¶ 10.)  The ALJ determined that Hoskins would be able to perform such jobs as a bonder operator, a food and beverage order clerk, or a charge account clerk.  (*Id.*)  For that reason, the ALJ concluded that Hoskins was not under a "disability," as defined by the SSA, and denied his applications for benefits. (AR 25 ¶ 11.) That denial prompted Hoskins's request for judicial review. (Doc. No. 1; AR 1-6.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards.  *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").  Any conflict in the evidence is to be resolved by the ALJ, and not the court.  *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of

credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's findings on several grounds. Hoskins argues, first, that the ALJ erred in his RFC determination, because he failed to properly weigh the opinions from Dr. Dewey and Dr. Bernardez-Fu. (Op. Brief 11-23.) He argues, specifically, that the ALJ effectively "reject[ed]" Dr. Dewey's opinion regarding postural limitations without providing "specific or valid" reasons for doing so. (*Id.* at 11-18.) Plaintiff likewise contends that the ALJ failed to provide "valid" or "good" reasons for "accepting" Dr. Bernardez-Fu's opinions regarding postural limitations. (*Id.* at 19-23.) Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence, because even though the ALJ found Plaintiff to be totally incapable of stooping, "the ALJ's hypothetical question to the vocational expert inexplicably omitted his own stooping limitation." (*Id.* at 23-24.) Finally, Hoskins argues that the ALJ improperly evaluated his credibility and subjective allegations of pain. (*Id.* at 24-26.) On this point, Plaintiff appears to make two arguments: (1) that the ALJ did not adhere to the proper framework to analyze his allegations concerning his need to lie down due to neck and back pain; and (2) that the ALJ's credibility finding was not supported by substantial evidence. (*Id.*) The Commissioner insists, however, that the ALJ properly considered the entire evidentiary record, and followed the applicable law, in determining that Hoskins is not disabled. (Resp. 1-13.)

## I. Credibility Determination

Hoskins challenges the ALJ's evaluation of his subjective complaints regarding the intensity, persistence, and limiting effects of his neck and back pain, specifically concerning his alleged need to lie down periodically throughout the day. (Op. Brief 24-26.)

"[C]redibility determinations are peculiarly the province of the finder of fact," and should not be "upset" if supported by "substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). That said, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (alterations and citation omitted). In other words, the ALJ must explain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The Tenth Circuit set out a tripartite framework for evaluating a disability claimant's subjective allegations of pain in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Under *Luna*, the ALJ must consider and determine: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged," *i.e.,* whether a "loose nexus" exists; "and (3) if so, whether, considering all evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (quoting *Luna*, 834 F.2d at 163-64). To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measure of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant

and other witnesses, and the consistency of compatibility of nonmedical testimony
with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)); *see* SSR 16-3P, 2016 WL 1119029, at *7 (Mar. 16, 2016) (listing similar factors to consider in evaluating a claimant's allegations of pain). The ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence," as long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In his written decision, the ALJ first summarized the appropriate framework for evaluating Plaintiff's allegations of pain. (AR 20.) The ALJ then very briefly summarized Hoskins's allegations, as set forth in a function report, a pain questionnaire, and his hearing testimony. (*Id.*) Next, the ALJ concluded, as to the first two steps of the *Luna* framework, that Plaintiff suffered medically determinable impairments, which "could reasonably be expected to cause the alleged symptoms." (*Id.*) The ALJ then determined that Plaintiff's allegations of pain were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ found, specifically, that the objective medical findings were "not entirely consistent with the level of disabling symptoms and limitations alleged by the claimant." (*Id.*) However, the ALJ failed to then provide adequate explanation or support for that finding.

Because the record contained some objective evidence of an impairment capable of producing the type of pain of which Plaintiff complained, the ALJ was required to consider whether Plaintiff's impairments were in fact disabling, based on all of the evidence of record, both objective and subjective. *Luna*, 834 F.2d at 163-64. In doing so, the ALJ was obligated to consider all relevant *Luna* factors. *Keyes-Zachary*, 695 F.3d at 1167. "Only at this point may

10

the decision maker decide whether he believes the claimant's assertions of severe pain." *Luna*, 834 F.2d at 163.  The SSA regulations make clear that the ALJ cannot rely on a lack of objective medical evidence, alone, to discredit a claimant's subjective reports of pain.  20 C.F.R. §§ 404.1529(c)(2)-(3).

In support of his credibility finding, the ALJ recounted Hoskins's treatment history with respect to his right knee, neck, and back, interspersed, at times, with certain of Hoskins's pain allegations.  (AR 20-22.)  The ALJ acknowledged that, following a right knee arthroscopic partial medial meniscectomy in November 2016, Plaintiff "continued to report knee pain," and exhibited "some decreased range of motion and pain in the right knee," but he noted that a July 15, 2017 treatment record showed that Plaintiff "did not appear uncomfortable rising from a seated position or getting on and off the examination table," and that Plaintiff exhibited "no discernable discomfort" flexing or extending his knee and ankle joints.  (AR 20-21.)  As to Plaintiff's neck impairment, the ALJ summarized Plaintiff's reports of "shooting pain down behind his shoulder into his triceps area," as well as his testimony concerning post-surgical pain "when he turns his head and when he reaches."  (AR 21.)  The ALJ then cited Plaintiff's April 2017 diagnosis of C6-7 foraminal stenosis with right C7 radiculopathy, and subsequent cervical discectomy and arthrodesis in October 2017, while noting that subsequent treatment records suggested a "good response" to the surgery, as well as "greatly" diminished symptoms of pain. (*Id.*)  In addition, the ALJ summarized the objective findings regarding Plaintiff's lower back pain.  (AR 21-22.)  The ALJ then referenced treatment records showing a "decreased range of motion and pain in [Plaintiff's] back, neck, and knee," but also "consistently" normal gait, muscle tone, and strength.  (AR 22.)

11

However, nowhere in his decision does the ALJ discuss exactly *how*, and to what extent, he found Plaintiff's allegations to be inconsistent with the objective medical evidence. Indeed, it is unclear from the ALJ's decision what portions of Plaintiff's testimony that he deemed believable, and what portions of the testimony that he did not. *C.f. Keyes-Zachary*, 695 F.3d at 1169 (finding no reversible error, based on the ALJ's alleged failure to explain what portions of the plaintiff's testimony that he found not credible, where the ALJ "listed many of [the plaintiff's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record"). In evaluating Plaintiff's credibility, it appears that the ALJ merely recited the content of the record, and then stated his ultimate conclusions, making his opinion essentially unreviewable. By failing to specifically link his conclusions to any particular evidence, the ALJ made it impossible for this court to tell in precisely what way the ALJ believed the evidence failed to support Plaintiff's claims. *See Kepler*, 68 F.3d at 391 ("Here, the link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion."); *Bennett v. Saul*, No. 15-cv-02309-KLM, 2020 WL 353101, at *13-14 (D. Colo. Jan. 17, 2020) (holding that an ALJ's credibility determination was not supported by substantial evidence, where the ALJ "gave largely boilerplate reasons for rejecting [the claimant]'s complaints of pain and did not link her conclusions to the evidence").

Further, it is not clear from the ALJ's decision whether, in assessing Plaintiff's credibility, the ALJ considered any of the *Luna* factors. For instance, aside from oblique references to "injections," "prescription medications," and "pain medications that cause drowsiness," the ALJ does not address Plaintiff's medication regimen, including dosages and

12

effectiveness. (AR 20-22.) Nor does the ALJ's decision even mention, much less discuss, the frequency of Plaintiff's medical contacts, the nature of his daily activities, or the extensiveness of his attempts (medical or nonmedical) to obtain relief. *See Siegle v. Barnhart*, 377 F. Supp. 2d 932, 944 (D. Colo. 2005) (holding that an ALJ failed to "closely and affirmatively" link his credibility finding to "substantial evidence," where the ALJ "briefly describe[d]" the plaintiff's daily activities, but did not "indicate if and how these daily activities [were] inconsistent with [the plaintiff's] allegations," and where the ALJ made reference to "inconsistent complaints" in the treatment records, "but provide[d] no details or citations to the record").

And, relevant here, the ALJ did not address Plaintiff's testimony that, due to neck pain, he must lay down frequently throughout the day. Specifically, Plaintiff testified that, on a daily basis, he must lay down for unspecified amounts of time "usually in the mornings," as well as a "couple [of] times in the afternoons." (AR 38.) At the hearing, the vocational expert explicitly stated his opinion, that an individual's need to lay down for more than ten minutes each day, in an "ongoing and sustained fashion," "would not be tolerated in competitive employment." (AR 53.) Further, Plaintiff's testimony concerning a need to lie down does not appear to be inconsistent with other evidence in the record. Nevertheless, the ALJ did not discuss this particular allegation in his decision, at all, and he did not explain why he did not include any such functional limitation in his RFC assessment. (*See* AR 15-26.)

On this record, then, the ALJ did not properly assess Plaintiff's credibility, because he failed to give adequate reasons for his findings, and because he did not closely and affirmatively link his conclusions to the evidence. Because this error was not harmless, the case must be reversed and remanded. *See Hayden v. Barnhart*, 374 F.3d 986, 992-94 (10th Cir. 2004) (finding

that the ALJ committed reversible error, when he failed to address the plaintiff's claims of disabling headaches in his decision, and where the claims were not inconsistent with the objective medical evidence); *Kepler*, 68 F.3d at 391.  On remand, the ALJ should conduct a proper *Luna*-based analysis, and reassess Plaintiff's credibility, by making findings that are closely and affirmatively linked to substantial evidence.

## II. Remaining Issues

Plaintiff raises additional arguments pertaining to the sufficiency of the underlying proceedings.  Because remand is warranted based on the ALJ's failure to adequately evaluate Plaintiff's credibility, there is no need to address those other arguments at this time.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("The ALJ's failure to develop the record affected the disability analysis as a whole and we therefore do not address the other issues Mr. Madrid raises on appeal.").

The court expresses no opinion as to the merit of Plaintiff's other arguments, and neither party should construe the court's silence as tacit approval, or disapproval, of how the evidence was considered.  This Order should not be read to suggest the result that should be reached on remand; rather, upon remand, the parties and the ALJ are encouraged to fully consider the evidence and all issues raised anew.  *See Kepler*, 68 F.3d at 391-92 ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.").

Accordingly, it is

ORDERED that the Commissioner's final decision is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order. It is further

ORDERED that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

This 16th day of March, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge